District of Connecticut
FILED AT   NEW HAVEN

Roberta D. Tabora  Clerk _____ 11/12/ _____ 20

By _____
        Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

MARIAME ROBINSON-COWAN

Criminal No. 3:14CR 219 (JBA)

VIOLATION:

18 U.S.C. § 371 [Conspiracy]

## I N F O R M A T I O N

The United States Attorney charges:

## COUNT ONE
(CONSPIRACY)

1.      At all times relevant to this Information, the defendant MARIAME ROBINSON-COWAN ("ROBINSON-COWAN") resided in Yonkers, New York.

2.      At various times relevant to this Information, co-conspirator #1 resided in Dayton, Ohio, Pittsburgh, Pennsylvania, Columbia, Maryland, and Laurel, Maryland, and operated a fraudulent lending business using addresses in both Dayton, Ohio and Pittsburgh, Pennsylvania. Co-conspirator #1 held himself out as an individual who could locate and secure funding (*i.e.*, loans) for various projects and used the business names of Jalin Realty Capital Advisors, LLC ("Jalin") and American Capital Holdings LLC ("ACH"), in furtherance of the conspiracy to defraud.

3.      At various times relevant to this Information, co-conspirator #2 resided in Dover

1

Massachusetts, with an office address in Brockton, Massachusetts, and he too held himself out as an individual who could locate and secure funding (*i.e.*, loans) for various projects.

4.      Certain victim-borrowers who sought to get funding from the conspirators and who provided them upfront fees (*e.g.*, application fees or commitment fees) in advance of their receiving any funding are referred to in this Information as victim-borrower #1 and victim borrower #2.

The Conspiracy

5.      Beginning in or about March 2010 and continuing until in or about October 2014, in the District of Connecticut, and elsewhere, defendant MARIAME ROBINSON-COWAN, together with others, known and unknown to the United States Attorney, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute the scheme and artifice did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, in violation of 18 U.S.C. § 1343.

Purpose of the Conspiracy

6.      The purpose of the conspiracy was for the defendant ROBINSON-COWAN and her co-conspirators to enrich themselves and their companies, including Jalin and ACH, by defrauding individuals out of money and property by means of materially false and fraudulent

pretenses, representations, and promises, including making false statements to obtain upfront fees in order to secure loan funds, when in truth and in fact, the conspirators would not and did not secure the loans for which they took and kept the upfront fees.

<u>Manner and Means of the Conspiracy</u>

The manner and means by which defendant ROBINSON-COWAN and her co-conspirators sought to accomplish and did accomplish the conspiracy included the following:

7.      It was a part of the conspiracy that co-conspirator #1 would and did represent to victim-borrowers and potential victim-borrowers that he was a broker of loans and, in that capacity, falsely represented he could locate and secure large amounts of capital to be loaned to the victim-borrowers to fund their various projects.

8.      It was further part of the conspiracy that co-conspirator #1 together with co-conspirator #2, would and did falsely represent to victim-borrowers and potential victim-borrowers that they had access to funding sources by way of Stand-By Letters of Credit and Bank Guarantees, some of which were from outside the United States, that could be monetized to provide funding for the victim-borrowers, and that their companies Jalin and ACH had successfully secured loans in the past for millions of dollars.

9.      It was further part of the conspiracy that co-conspirator #1 together with co-conspirator #2 would and did solicit upfront fees (*e.g.*, application fees or commitment fees) from various victim-borrowers and potential victim-borrowers in person, over the phone, and by e-mail.

10.     It was further part of the conspiracy that co-conspirator #1 together with co-conspirator #2 would and did falsely represent that the upfront fees (*e.g.*, application fees or commitment fees) would be used for securing the funding and performing due diligence with respect to the victim-borrowers' various projects, when in truth and in fact the upfront fees were spent by the conspirators.

11.     It was further part of the conspiracy that co-conspirator #1 together with co-conspirator #2 would and did falsely represent that the upfront fees (*e.g.*, application fees or commitment fees) were fully refundable, when in truth and in fact, they would not and did not fully refund the upfront fees.

12.     It was further part of the conspiracy that in order to convince victim-borrowers that the loans were legitimate and that his companies Jalin and ACH had in fact successfully secured loans in the past, co-conspirator #1 would and did provide victim-borrowers and potential victim-borrowers with defendant ROBINSON-COWAN'S name and phone number and tell them that they could contact defendant ROBINSON-COWAN for a reference.

13.     It was further part of the conspiracy that defendant ROBINSON-COWAN would and did falsely represent to victim-borrowers and potential victim-borrowers that she had in fact received funding from co-conspirator # 1 for a construction loan and that she had successfully done a project financed with co-conspirator #1 and his company Jalin, when in truth and in fact defendant ROBINSON-COWAN had never received such funding and had never done such a project.

14.    It was further a part of the conspiracy that, in order to create the appearance of legitimacy and in an effort to deceive the victim-borrowers into believing that the loans were real and that the upfront fees were being used as represented, the co-conspirators would and did present fraudulent loan documents, including documents entitled "Loan Commitment" to the victim-borrowers for them to execute, that included among other things, a term sheet with terms of the loan, the loan amount, the commitment fee, various legal representations, such as non-circumvention/non-disclosure agreements that purportedly related to the loan, and also repeated the representation that the upfront fees would be fully refunded if project funding was not finalized.

15.    It was further part of the conspiracy that the conspirators would and did induce various victim-borrowers into providing money to the co-conspirators as upfront fees (*e.g.*, application fees or commitment fees) purportedly so that the co-conspirators could locate and secure large amounts of capital to be loaned to the victim-borrowers for projects, when in truth and in fact, there were no such large amounts of capital to be loaned and there were no such loans executed.

16.    It was further part of the conspiracy that after the conspirators induced the various victim-borrowers to provide the upfront fees (*e.g.*, application fees or commitment fees) to the conspirators and to their companies Jalin and ACH as advance fees, including funds sent by use of the interstate wires, the co-conspirators would and did use a significant portion of the upfront fees (*e.g.*, application fees or commitment fees) for their own personal purposes.

17.     It was further part of the conspiracy that, after the victim-borrowers had provided the upfront fees (*e.g.*, application fees or commitment fees) the conspirators would and did seek to lull the victim-borrowers into believing that the conspirators were seeking to get funding for the projects as represented, including sending e-mails into the District of Connecticut and elsewhere falsely stating to victim-borrowers, among other things, that:

    a.  The deal structure is firm and we stand ready to assist;

    b.  Once the pre-advice is accepted and responded to by the monetizing agent, we will issue the MT760 (Bank guarantee) and fund the transaction;

    c.  We are in the process of issuing a MT-760 to consummate funding for the above referenced client.   We are in the first stage of the process with the MT-799 being issued to the participating lender;

    d.  The BG (Bank Guarantee) is ready to be issued as stated and we are ready to release once we have the verification of the lending entities ability to perform;

<u>Overt Acts</u>

18.     In furtherance of the conspiracy and to effect the objects of the conspiracy, defendant ROBINSON-COWAN, and others known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

    a.  On or about May 10, 2010, co-conspirator #1 did knowingly cause to be transmitted in interstate commerce an electronic funds transfer (*i.e.*, wire transfer) in the amount of $35,000 as an application fee, from victim-borrower #1's Naugatuck Savings Bank account located in Ansonia, Connecticut to an account held in the name of Jalin Realty Capital Advisors, LLC, account ending in 0933 at Woodforest National Bank located in Dayton, Ohio.

All in violation of Title 18, United States Code, Section 371.


UNITED STATES OF AMERICA


_____
DEIRDRE M. DALY
UNITED STATES ATTORNEY


_____
ANTHONY E. KAPLAN
ASSISTANT UNITED STATES ATTORNEY


_____
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY